**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION**

| | |
|---|---|
| BANILLA GAMES, INC. and GROVER GAMING, INC., | |
| Plaintiffs, | |
| v. | Civil Action No. ___1:24cv6___ |
| GRAYSON LIGHTNING LUBE LLC, | |
| Defendant. | |

**VERIFIED COMPLAINT**

Plaintiffs, Banilla Games, Inc. ("**Banilla**") and Grover Gaming, Inc. ("**Grover**") (collectively, "**Plaintiffs**"), by counsel, state as follows for their Verified Complaint (the "**Complaint**") against the Defendant, Grayson Lightning Lube LLC ("**Grayson Lightning**" or, the "**Defendant**").

**INTRODUCTION**

1.      Plaintiffs bring this action seeking injunctive and monetary relief for Defendant's willful infringement of Plaintiffs' intellectual property rights and other exclusive rights in and to Plaintiffs' FUSION brand of video gaming systems ("**FUSION Games**").

2.      Plaintiffs' FUSION Games are a series of game suites branded with Plaintiffs' FUSION mark. Each game suite in the series—e.g., "Fusion," "Fusion 2," "Fusion 3," "Fusion 4," "Fusion 5," and "Fusion Link"—comprises a different selection of five (5) individual games that a player can select for play.

3.      Grover creates the FUSION Games—both the individual games and each game suite—and Banilla is the exclusive distributor of the FUSION Games.

4.      Plaintiffs protect the individual games, game suites, FUSION brand, and underlying software via copyright, trademark, and trade secret protections.

5.      Grover owns federal copyright registrations for the FUSION Games—for both the games suites and for individual games.

6.      Plaintiffs own common law trademark rights in and to the FUSION mark, and Grover has a pending federal trademark application for the FUSION mark. Banilla owns federal trademark registrations for two BANILLA GAMES marks.

7.      Plaintiffs own the trade secrets in and to the FUSION Games software.

8.      Plaintiffs sue for copyright infringement under the United States Copyright Act of 1976, as amended (the "**Copyright Act**"), 17 U.S.C. § 101 *et seq.* Those claims arise out of and are based on Defendant's purchase and public display of and profiting from counterfeit FUSION Games. Plaintiffs seek all remedies afforded by the Copyright Act, including preliminary and permanent injunctive relief, Plaintiffs' damages and Defendant's profits from Defendant's willfully infringing conduct, and other monetary relief.

9.      Plaintiffs sue for unfair competition and false designation of origin under Section 43(a) of the Lanham Act (the "**Lanham Act**"), 15 U.S.C. § 1125, and for substantial and related claims of unfair competition and trademark infringement under the statutory and common laws of the Commonwealth of Virginia. Those claims arise out of and are based on Defendant's purchase of and profiting from counterfeit FUSION Games, games which all prominently display unauthorized uses of Plaintiffs' FUSION mark to attract players. Plaintiffs seek all remedies afforded by the Lanham Act and by the statutory and common laws of the Commonwealth of Virginia.

10.     Plaintiffs sue for trade secret misappropriation under the Defend Trade Secrets Act ("**DTSA**"), 18 U.S.C. § 1836, and for substantial and related claims of trade secret misappropriation under Virginia's Uniform Trade Secrets Act ("**VUTSA**"), Va. Code § 59.1-336, *et seq.* Those claims arise out of and are based on Defendant's purchase and use of and profiting from counterfeit FUSION Games, games which all contain pirated and hacked versions of Plaintiffs' software. Plaintiffs seek all remedies afforded by the DTSA and VUTSA.

## PARTIES, JURISDICTION, AND VENUE

11.     Grover is a corporation organized and existing under the laws of the State of North Carolina, with its principal place of business in Greenville, Pitt County, North Carolina, and is authorized to transact business in Virginia.  Grover creates, designs, develops, and manufactures the software, artwork, and audiovisual effects for various electronic games in various markets, such as the skill-based redemption and electronic pull-tab markets.

12.     Banilla is a corporation organized and existing under the laws of the State of North Carolina, with its principal place of business in Greenville, Pitt County, North Carolina, and is authorized to transact business in Virginia.  Banilla designs, develops, and distributes products for various board, nudge, skill, redemption, and amusement game markets.

13.     Defendant Grayson Lightning is a limited liability company organized and existing under the laws of the Commonwealth of Virginia with its principal office located at 840 E. Main Street, Independence, Virginia 24348.  Grayson Lightning is authorized to transact business in the Commonwealth of Virginia and Grayson Lightning's registered agent is Kendall O. Clay, Esq., with a registered office address located at 1210 Grove Avenue, PO Box 852, Radford, Virginia 24141. Upon information and belief, no member or manager of Grayson Lightning is a resident of the state of North Carolina.  Grayson Lightning is, among other things, a provider and distributor of electronic skill games, making such games available for play by eventual end-users.

14.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338, as Plaintiffs allege claims arising under the laws of the United States.

15.     This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C § 1332(a), as the Plaintiffs and Defendant are citizens of different states and the claims asserted herein exceed $75,000.

16.     This Court has personal jurisdiction over Defendant because Defendant transacted business in and knowingly committed the acts occurring herein in the Commonwealth of Virginia, and Plaintiffs' claims arise from those activities.  Defendant is committing tortious acts inside the Commonwealth of Virginia, which acts have caused and are causing Plaintiffs substantial injury in the Commonwealth of Virginia.

17.     Venue is proper in this district under 28 U.S.C. §§ 1391(b) (2), and (3) and 1400(a), because a substantial part of the events or omissions giving rise to the claim occurred in this District, and because a substantial part of the property that is the subject of this action is situated in this District; specifically, in the Grayson County area.

## FACTS

### GROVER'S BUSINESS AND ITS INTELLECTUAL PROPERTY

18.     Since 2013, Grover has invested millions of dollars in developing high-quality and reliable electronic games of skill.  Indeed, Grover has hired a growing team of dedicated employees who develop from scratch all design and software components of Grover's games in-house, while acting within the scope of their employment, including the games' source code, object code, 3-D and other artwork, static images, and other visual and audiovisual effects that help to make Grover's games an enjoyable experience for the end-user.  In creating these products, Grover did not copy any of the artwork, static images, or audiovisual effects from another game or a non-Grover author.

19.     Plaintiffs also have invested substantial time, effort, and resources in marketing those games to their customers and providing top-level customer service to those customers who purchase those legitimate games.

20.     Grover's games are well-respected by Plaintiffs' customers (e.g., the operators who purchase the games) and end-users (e.g., the individuals who play the games), each of whom have come to expect high-quality games and top-notch customer service from Plaintiffs.

21.     Grover is the owner of all intellectual property rights to the software for the FUSION Games, each of which is a series of game suites, and those intellectual property rights include multiple federal copyright registrations issued by the United States Copyright Office for the computer files and associated audiovisual effects used in its FUSION Games, including the following:

- Number PA0002206908, obtained on October 11, 2019, for Grover's "Fusion" video game (the "**Fusion Copyrighted Work**").

- Number PA0002218349, obtained on October 11, 2019, for Grover's "Fusion 2" video game (the "**Fusion 2 Copyrighted Work**").

- Number PA0002218347, obtained on October 11, 2019, for Grover's "Fusion 3" video game (the "**Fusion 3 Copyrighted Work**").

- Number PA0002293309, obtained on May 24, 2021, for Grover's "Fusion 4" video game (the "**Fusion 4 Copyrighted Work**").

- Number PAu004088597, obtained on May 24, 2021, for Grover's "Fusion 5" video game (the "**Fusion 5 Copyrighted Work**").

- Number PA0002368424, obtained on July 19, 2022, for Grover's "Fusion Link" video game (the "**Fusion Link Copyrighted Work**").

Grover also owns federal copyright registrations for the two-dimensional artwork used in its individual game titles, including individual game titles that are incorporated into the FUSION

suites of games.[1] Hereinafter, the above copyrighted works will be referred to collectively as the **"Copyrighted Works"**.

22.     In addition, Grover has used the trademark "FUSION" in commerce throughout the United States continuously since February 28, 2017, in connection with the creation, distribution, offering for sale, sale, marketing, and promotion of the FUSION Games, including the Copyrighted Works.  Attached as **Exhibit A** are representative samples of materials showing Plaintiff's use of the "FUSION" mark (the **"Mark"**) in connection with the FUSION Games.

23.     Grover has applied for registration of the Mark on the Principal Register and is the owner of United States Trademark Application Serial No. 90850171 filed in the United States Patent and Trademark Office ("USPTO") on July 27, 2021, for the trademark "FUSION" (the **"Application"**).  A copy of the application is attached as **Exhibit B**.

24.     By investing these resources over the last several years, Plaintiffs have established themselves as global leaders in the electronic gaming industry.  As global leaders, Plaintiffs protect their businesses and products through best practices, including registration of copyrightable works, registration of trademarks and service marks, protection of their trade secrets, and protection of

---

[1] The federal copyright registrations for the two-dimensional artwork used in the individual game titles include, but are not limited to:  Number VA0002186037, obtained on October 11, 2019, for two-dimensional artwork used in the game title Captain Calamari (the "**Captain Calamari Copyrighted Work**"); Number VA0002173744, obtained on October 11, 2019, for two-dimensional artwork used in the game title Crumble Cave (the "**Crumble Cave Copyrighted Work**"); Number VA0002186038, obtained on October 11, 2019, for two-dimensional artwork used in the game title Festival of Dragons (the "**Festival of Dragons Copyrighted Work**"); Number VA0002186039, obtained on October 11, 2019, for two-dimensional artwork used in the game title Great American Buffalo (the "**Great American Buffalo Copyrighted Work**"); Number VA0002184885, obtained on October 11, 2019, for two-dimensional artwork used in the game title VIP Lounge (the "**VIP Lounge Copyrighted Work**"); Number VA0002184975, obtained on October 11, 2019, for two-dimensional artwork used in the game title Midnight Wolf (the "**Midnight Wolf Copyrighted Work**"); and Number VA0002184978, obtained on October 11, 2019, for two-dimensional artwork used in the game title Princess of the Nile (the "**Princess of the Nile Copyrighted Work**").

their other intellectual property, including through enforcement actions, such as this one, to ensure their rights and their intellectual property assets are not infringed or misappropriated.

25.     Indeed, in addition to the Copyrighted Works, Grover owns multiple copyrights in and to the computer files associated with its video games.  Grover actively protects its copyrighted works, including the Fusion 4 Copyrighted Work, by having at least 34 active, registered copyrights surrounding its business and products.

26.     Plaintiffs also take commercially reasonable measures to ensure the confidentiality of Grover's proprietary software, including the software associated with the Copyrighted Works. In this regard, Plaintiffs: (a) maintain and protect source code as a trade secret; (b) take steps to prevent end-users from accessing source code through a process called "obfuscation;" and (c) actively protect the artwork used in computer files and software, including the Copyrighted Works, by creating, registering, and maintaining copyrights in both the static images and the audiovisual effects used in the software.

## THE COPYRIGHTED WORKS

27.     Among its various products, Grover has created, owns, and sells, its FUSION Games, which games are comprised of software, both source code and object code, and artwork that make the FUSION Games well-known in the marketplace and distinctive to Grover.  The FUSION Games' artwork includes both static images, as well as the audiovisual effects that connect those static images.

28.     The FUSION Games, currently in their sixth generation and each comprising a different suite of five games, contain material wholly original to Grover, and is copyrightable subject matter under the laws of the United States.

29.     Relevant to the instant dispute, Grover owns federal registrations in the Copyrighted Works.  True and correct copies of the registrations for the Copyrighted Works are attached hereto as **Exhibit C**.

30.     Grover distributes its FUSION Games, including the Copyrighted Works, in stand-alone gaming cabinets, or as independent software, sold through its exclusive distributor, Banilla. End-users purchase these cabinets or the software, and a particular version of the FUSION Games, such as the Copyrighted Works, from Banilla and then offer them for use by end-users in, among other states, the Georgia COAM market.

## GROVER'S TRADE SECRETS

31.     Computer software, like the FUSION Games, is comprised of source code and object code.  Source code is created by a computer programmer with a text editor and is readable by humans.  Object code[2] is the output of a source code compiled into a machine code that contains a sequence of machine-readable instructions.

32.     With respect to the source code and object code associated with the FUSION Games, Grover creates the source code and saves it in multiple "library" files that are accessible only to employees who need access to them and who have executed a confidentiality agreement. Pursuant to the terms of this confidentiality agreement, Grover's employees are prohibited from disclosing any information concerning Grover's "confidential information," including source code.  This obligation survives the termination of any employee's employment with Grover.

---

[2] Object code is a series of 1s and 0s, and is generally only readable by machines.  While a human might be able to understand the patterns with enough study, doing so would take a significant amount of time.

33.     Using a computer program known as a compiler, Grover transforms these human-readable library files into machine-readable object code, which object code forms the basis for the executable file that launches each game.

34.     The compiler includes an obfuscation feature,[3] which allows Grover to build redundancies into each version of its FUSION Games to prevent tampering and reverse engineering of its source code.  Grover obfuscated the source code for each of its FUSION Games, including the Fusion 4 game that is associated with the Fusion 4 Copyrighted Work.

35.     A certain "library" file controls Grover's activation mechanism ("**Activation Mechanism**").  The Activation Mechanism is responsible for determining whether the FUSION Games are authentic.

36.     Grover takes commercially reasonable measures to maintain its "library" files, including both its source code and its Activation Mechanism.  These "library" files are confidential and proprietary to Grover and are maintained as trade secrets (together, the "**Source Code**").

37.     In particular, access to these "library" files is limited to employees who have a need to know the information and who have executed confidentiality agreements.

38.     Moreover, because Grover obfuscates its source code, it is not generally known outside of Grover and further allows Grover to maintain its source code as a trade secret.  Indeed, because Grover obfuscates its source code, it would be very difficult for someone, even a sophisticated computer programmer, to re-create the exact logic used in the source code.

---

[3]  Obfuscation is the deliberate act of creating object code with redundancies, so that it is even more difficult for humans to read and understand.

39.     Thus, Grover's "library" files derive independent economic value by remaining secret.  Indeed, Grover's Source Code, and its secrecy, allows Grover to maintain its competitive advantage in the marketplace.

## BANILLA'S BUSINESS

40.     Banilla, as the exclusive distributor, sells and distributes FUSION Games.  Through Banilla, the FUSION Games, including the Copyrighted Works, reach end-users, who, in turn, place the FUSION Games in their respective places of business.

41.     In order to obtain the FUSION Games, among others, and thus the Copyrighted Works, an individual or business must purchase the FUSION Games directly from Banilla or another legitimate reseller of the FUSION Games, to whom Banilla initially sold legitimate FUSION games (e.g., Great Lakes Amusement).

## PLAINTIFFS' CEASE AND DESIST ATTEMPT

42.     In or around September 16, 2023, Plaintiffs learned, through Plaintiffs own due diligence, that Defendant was in possession of and was using, selling, and/or distributing counterfeit, pirated, or hacked versions of the Fusion 4 Copyrighted Work, and allowing such counterfeit and unauthorized games to be used by his customers (i.e., end-users). Defendant's store is located at 2686 Grayson Parkway, Independence, Virginia 24348.  Pirated software is the unauthorized use, copying, or distribution of copyrighted software and can take many forms, including the unauthorized, illegal access to protected software and/or reproducing or distributing counterfeit or otherwise unauthorized software.

43.     After learning of Defendant's use of at least two (2) unauthorized, pirated, and counterfeit machine, Banilla and Grover exercised reasonable diligence and verified that such unauthorized use of pirated or counterfeited machines by Defendant was occurring and continuing.

44.     Following verification of Defendant's use of at least two (2) unauthorized, pirated, and counterfeit machines, Banilla and Grover sent a Cease-and-Desist Letter to Defendant. The Cease-and-Desist letter demanded, among other things, that Defendant cease and desist from owning, operating, publicly displaying, offering for use, selling, or vending any and all counterfeit FUSION Games, as well as demanded Defendant turnover all counterfeit games in his possession.

45.     Despite the Cease-and-Desist Letter being physically delivered, Defendant has failed to respond to Plaintiffs' demands.

**DEFENDANT'S INFRINGEMENT OF THE
FUSION 4 COPYRIGHTED WORK AND OF THE MARK**

46.     Upon information and belief, Defendant purchased and/or vended unauthorized, pirated, and/or hacked versions of the Fusion 4 Copyrighted Work on the secondary market (the "**Illicit Games**").  These cabinets and the Illicit Games therein were neither created, sold, nor otherwise authorized or licensed by Plaintiffs.  Upon information and belief, Defendant has either purchased and/or vended additional Illicit Games or has the means, motive, and capability to obtain, provide, and use more Illicit Games.

47.     Upon information and belief, the Illicit Games are the product of a third party unpackaging, decompiling, and de-obfuscating Grover's trade secrets.  Using this process, the third party was able to gain access to Grover's multiple "library" files, which contain Grover's proprietary source code and trade secrets.   In other words, the third party was able to misappropriate Grover's trade secrets by undoing the deliberate and intentional steps Grover takes and had taken to prevent third parties from ascertaining Grover's trade secrets.

48.     Upon information and belief, through this certain third party's efforts, they were able to bypass Grover's validation logic by altering the Activation Mechanism and market and sell hacked versions of the Illicit Games.

49.     The hacked/pirated/counterfeit Illicit Games are sold for significantly less than genuine products.  A genuine Fusion 4 game costs $4,995.00 per game board.  Upon information and belief, Defendant paid significantly less for its Illicit Games.   This model allows the misappropriating third party, Defendant, to undercut Banilla's market share and steal Banilla's profits.  In addition, the Defendant is able to increase its profits at the expense of Banilla and Grover.  By purchasing Illicit Games at a cheaper price, Defendant is able to maximize profits by receiving a larger portion of net revenue, and ultimately secure locations that otherwise would use Plaintiffs' legitimate machines.

50.     Defendant purchased and/or vended at least two (2) Illicit Game that knowingly misappropriated Grover's trade secrets and Fusion 4 Copyrighted Work.

51.     Defendant vended and/or purchased the Illicit Games for the purpose of displaying them and offering them for use by end-users entering Defendant's location.  Upon information and belief, Defendant purchased the Illicit Games for only a fraction of the amount at which genuine games containing the Copyrighted Works cost, thereby increasing their profits.  *See supra,* ¶ 39. Moreover, Plaintiffs' profits have thereby decreased as a result of the Illicit Games.

52.     Defendant's Illicit Games are nearly identical to the Copyrighted Works, in that they present the same game play and almost identical artwork.  However, the Illicit Games perform at slower speeds than the Copyrighted Works, and the artwork in the Illicit Games presents dimmer artwork than the Copyrighted Works.  Additionally, the game boards that run the Illicit Games are designed completely different from Plaintiffs' genuine game boards.

### THE ILLICIT GAMES INFRINGE THE FUSION 4 COPYRIGHTED WORK

53.     Grover created, designed, and owns the audiovisual effects that tie together the artwork used in the Copyrighted Works, and in this instance the Fusion 4 Copyrighted Work,

which effects depict a series of related images that, when shown in a sequence, impart an impression of motion and the expression fixed in motion.

54.     The Copyrighted Works are wholly original, and Grover is the exclusive owner of all right, title, and interest in the Copyrighted Works and the owner of all the exclusive rights associated with those Copyrighted Works, including, but not limited to, the right to reproduce its software in copies and to distribute those copies to the public.  Additionally, 17 U.S.C. § 106(5) also provides Grover, as copyright holder for "motion picture or other audiovisual works", the exclusive right to display the work publicly.

55.     Defendant has published and publicly displayed unauthorized, unlicensed, and counterfeit reproductions of the Fusion 4 Copyrighted Work, without Grover's authorization, consent, or knowledge, and without any compensation to Grover.  In particular, Defendant has published and publicly displayed unauthorized, unlicensed, and counterfeit versions of the Fusion 4 Copyrighted Work each time consumers play its Illicit Game(s).

56.     As a result of Defendant's willful actions, Grover has been damaged, and continues to be damaged, by the unauthorized publication and public display of counterfeit versions of the Fusion 4 Copyrighted Work.  Defendant has never accounted to or otherwise paid Grover for their improper, illegal, and unauthorized use of counterfeit versions of the Fusion 4 Copyrighted Work.

57.     Defendant's acts are causing, and unless restrained, will continue to cause damage and immediate irreparable harm to Grover for which Grover has no adequate remedy at law.

### THE ILLICIT GAMES INFRINGE THE SOURCE CODE

58.     Grover considers its Source Code confidential information and trade secrets and has taken reasonable steps to keep its Source Code secret.

59.     Defendant purchased the Illicit Game(s), which actually misappropriated Grover's Source Code.

60.     Defendant's actions, including Defendant's use, marketing, and/or selling of the Illicit Game(s), also misappropriates Grover's Source Code.

61.     Defendant's foregoing actions, including the improper access to and use of Grover's Source Code, was done without Grover's permission.

62.     Defendant's acts are causing, and, unless restrained, will continue to cause, damage and immediate irreparable harm to Grover for which Grover has no adequate remedy at law.

63.     Defendant's acts have caused, and will continue to cause, Grover to lose profits.

## DEFENDANT'S IMPACT ON GROVER AND BANILLA

64.     Banilla is Grover's exclusive distributor of FUSION Games.  Banilla sells FUSION Games to end-users, who, in turn, use them in their places of business.

65.     Before Defendant began offering and displaying the Illicit Game(s), consumers associated any Fusion Game with Grover and Banilla.

66.     Defendant's Illicit Game(s) are similar in every way to authentic FUSION Games sold and distributed by Banilla.  For example, the following chart shows images from Grover's Fusion 4 gaming system in the left column, and images taken of Defendant's Illicit Games in the right column during Plaintiffs' due diligence:



67.     Consumers likely will associate Defendant's Illicit Game(s) with Banilla and Grover because, *inter alia*, Defendant's Illicit Games mimic in every way the experience provided by the Fusion 4 Games.

68.     Defendant has engaged in an unfair method of competition and unfair trade practice.

69.     Defendant's acts are causing, and unless restrained, will continue to cause damage and immediate irreparable harm to Banilla and Grover for which Banilla and Grover have no adequate remedy at law.

### FIRST CLAIM FOR RELIEF
*(Grover – Copyright Infringement)*

70.     Plaintiffs incorporate the preceding paragraphs by reference.

71.     The Copyrighted Works are motion picture/audiovisual effects containing copyrightable subject matter for which copyright protection exists under the Copyright Act, 17 U.S.C. §§ 101, *et seq.*

72.     Grover is the exclusive owner of all exclusive rights under copyright in the Copyrighted Works.  Grover owns valid copyright registrations, issued by the United States Copyright Office, for the Copyrighted Works, specifically the Fusion 4 Copyrighted Work.  *See* Ex. C.

73.     The Copyrighted Works were created in-house by Grover employees acting within the scope of their employment.  None of these employees have any contractual rights to ownership of the Copyrighted Works.  As such, the Copyrighted Works constitute works made for hire.

74.     The Copyrighted Works were registered within five (5) years of the first publication of the Copyrighted Works.

75.     By making the Illicit Game(s) available for use by end-users, Defendant has publicly displayed and published pirated, hacked, and/or counterfeit copies of the Fusion 4 Copyrighted Work, and has done so without Grover's permission.

76.     Upon information and belief, Defendant's infringing conduct was, and continues to be, willful, with full knowledge of Grover's interest in the Copyrighted Works, and specifically the Fusion 4 Copyrighted Work.

77.     As a direct and proximate result of Defendant's willful, and continuing, infringement of Grover's Fusion 4 Copyrighted Work, and pursuant to 17 U.S.C. § 503(a), this Court "may order the impounding . . . (A) of all copies or phonorecords claimed to have been made or used in violation of the exclusive right of the copyright owner; . . . (C) of records documenting

the manufacture, sale, or receipt of things involved in any such violation, provided that any records seized under this subparagraph shall be taken into the custody of the court."

78.     As a direct and proximate result of Defendant's willful infringement of Grover's copyrights, Grover is entitled to statutory damages, pursuant to 17 U.S.C. § 504(c), in an amount of up to $150,000 with respect to Defendant's infringing use of the Copyrighted Works, and specifically the Fusion 4 Copyrighted Work, or such other amount as may be appropriate under 17 U.S.C. § 504(c).  Alternatively, at Grover's election, pursuant to 17 U.S.C. § 504(b), Grover shall be entitled to its actual damages, including Defendant's profits from the infringements, as will be proven at trial.

79.     In all events, Defendant's acts are causing, and, unless restrained, will continue to cause, damage and immediate irreparable harm to Grover for which Grover has no adequate remedy at law.  Grover is thus entitled to impoundment of the Illicit Games, a temporary restraining order, preliminary injunction, and permanent injunction.

## SECOND CLAIM FOR RELIEF
*(Grover – Contributory Copyright Infringement)*

80.     Plaintiffs incorporate the preceding paragraphs by reference.

81.     Defendant has no authorization, permission, license, or consent to use and/or utilize and exploit the Fusion 4 Copyrighted Work in the Illicit Game(s) at issue.

82.     Defendant had knowledge the Illicit Game(s) are unauthorized, pirated, hacked, and/or counterfeit copies of the Fusion 4 Copyrighted Work.

83.     Defendant materially contributed to the continued infringement of Grover's Fusion 4 Copyrighted Work by continuing to provide the Illicit Game(s) in commerce.

84.     The foregoing acts of infringement by Defendant have been willful, intentional, and purposeful, in complete disregard of Grover's rights.

85.     As a direct and proximate result of Defendant's willful infringement of Grover's copyrights, Grover is entitled to statutory damages, pursuant to 17 U.S.C. § 504(c), in an amount of up to $150,000 with respect to Defendant's infringing use of the Copyrighted Works, or such other amount as may be appropriate under 17 U.S.C. § 504(c).  Alternatively, at Grover's election, pursuant to 17 U.S.C. § 504(b), Grover shall be entitled to their actual damages, including Defendant's profits from the infringements, as will be proven at trial.

86.     Plaintiffs are also entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

### THIRD CLAIM FOR RELIEF
*(Grover and Banilla – False Designation of Origin and*
*Unfair Methods of Competition Pursuant to 15 U.S.C. § 1125)*

87.     Plaintiffs incorporate the preceding paragraphs by reference.

88.     Banilla is Grover's exclusive distributor of Grover's FUSION Games, which games are sold by Banilla as either software boards or in freestanding gaming cabinets.

89.     Defendant has marketed, publicly displayed, presented, and offered for use to consumers their Illicit Game(s), which mimic the Fusion 4 Copyrighted Work, in interstate commerce.  The Illicit Game(s) were neither authorized, created, sold, licensed, sponsored, nor distributed by Plaintiffs.

90.     Defendant is passing off its Illicit Game(s) as those authorized, created, licensed, sold, and/or distributed by Plaintiffs.

91.     Defendant's Illicit Game(s) are likely to cause confusion, mistake, or deception of the consuming public as to the origin, source, sponsorship, or affiliation of their Illicit Game(s). Actual and potential consumers, upon encountering Defendant's Illicit Games, are likely to mistakenly believe that Defendant's Illicit Game(s) originate with, or are sold, licensed, approved, sponsored by, or otherwise affiliated with Plaintiffs.

92.     By their unauthorized conduct, use of counterfeit copies of the Fusion 4 Copyrighted Work, and unauthorized use of Plaintiffs' trademarks, Defendant has engaged in unfair competition with Plaintiffs, false designation of origin, and misleading description and representation of fact in violation of the Lanham Act, 15 U.S.C. § 1125(a).

93.     Upon information and belief, Defendant's actions have been, and continue to be, willful and with the intent to profit from the goodwill established by Plaintiffs in the FUSION Games.  Defendant's actions are intended to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendant with Plaintiffs.

94.     Plaintiffs are entitled to an award of actual damages, Defendant's profits, enhanced damages and profits, reasonable attorneys' fees, and costs, under 15 U.S.C. §§ 1116-17, as well as pre- and post-judgment interest.

95.     Defendant's conduct is causing immediate and irreparable harm and injury to Grover and Banilla, and to their goodwill and reputation, and will continue to both damage Plaintiffs and confuse the public unless enjoined.  Grover and Banilla have no adequate remedy at law.  Plaintiffs are thus entitled to a temporary restraining order, preliminary injunction, and permanent injunction.

**FOURTH CLAIM FOR RELIEF**
*(Grover and Banilla – Common Law Unfair Competition)*

96.     Plaintiffs incorporate the preceding paragraphs by reference.

97.     This claim is for passing off, unfair competition, and deceptive trade practices in violation of the common law of the Commonwealth of Virginia.

98.     Defendant is passing off its Illicit Games as those authorized, created, licensed, sold, and/or distributed by Plaintiffs, thereby causing harm to the reputation and goodwill of Plaintiffs.

99.     Upon information and belief, Defendant's acts of common law passing off, unfair competition and deceptive trade practices have been done willfully and deliberately.

100.    Defendant has profited and been unjustly enriched by revenue from the Illicit Game(s) that Defendant would not otherwise have made but for their unlawful conduct.

101.    Plaintiffs have been damaged by Defendant's passing off and unfair or deceptive acts or practices.

102.    Upon information and belief, Defendant's actions have been, and continue to be, willful, with intent to profit from the goodwill established by Plaintiffs in the Fusion Package 4 games, and with reckless indifference to the rights of Plaintiffs.

103.    As a result of Defendant's passing off and unfair trade practices, Plaintiffs are entitled to an award of its damages, including enhanced damages, costs, and punitive damages, as well as injunctive and equitable relief.

### FIFTH CLAIM FOR RELIEF
*(Grover and Banilla – Common Law Trademark Infringement)*

104.    Plaintiffs incorporate the preceding paragraphs by reference.

105.    Defendant, without authority, have used and are continuing to use Grover's Mark, and counterfeit imitations thereof, in connection with the sale, offering for sale, use, placement, marketing, and/or public display of the Illicit Game(s), thereby inducing Defendant's customers and/or clients, and others, to believe, contrary to fact, that the Illicit Game(s) placed by Defendant emanate or originate from Plaintiffs, or that Plaintiffs have approved, permitted, licensed, or otherwise associated themselves with Defendant and its Illicit Game(s).  Defendant's acts have damaged, impaired, and diluted that part of goodwill symbolized by the Mark, to Grover's immediate and irreparable damage.

106.     Actual and potential consumers, upon encountering Defendant's Illicit Game(s), are likely to be confused about the source of origin of the Illicit Game(s) and will likely mistakenly believe that Defendant's Illicit Games originate with, or are sold, licensed, approved, sponsored by, or otherwise affiliated with Plaintiffs.

107.     Defendant's unauthorized use of the Mark or counterfeit imitations thereof, which are either identical or confusingly similar to Grover's Mark, in connection with the advertising and sale of FUSION Games or Illicit Game(s), is likely to cause confusion, mistake, or deception as to the source of Defendant's Illicit Game(s) and constitutes infringement of the Mark under the common law of the Commonwealth of Virginia.

108.     Defendant has used the Mark on its Illicit Game(s) that were not manufactured by or authorized by Plaintiffs, and, therefore, Defendant has deliberately attempted to deceive and mislead consumers.

109.     At all times relevant hereto, Defendant had actual and direct knowledge of Plaintiff's prior use and ownership of the Mark.  Defendant's acts, therefore, are done in bad faith and with actual malice in order to exploit the goodwill and strong brand associated with the Mark, and constitutes common law trademark infringement under the common law of the Commonwealth of Virginia.

110.     Defendant, through its continued and unauthorized use of the Mark, is unfairly benefiting from and misappropriating Plaintiffs' goodwill and reputation, resulting in serious, substantial, and irreparable injury to the Plaintiffs and the public.

### SIXTH CLAIM FOR RELIEF
*(Grover – Misappropriation of Trade Secrets Pursuant to 18 U.S.C. § 1836(b))*

111.     Plaintiffs incorporate the preceding paragraphs by reference.

112.    Grover's confidential information includes trade secrets and/or other proprietary information that derives independent economic value from not being known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

113.    Grover's confidential and trade secret information has been and continues to be the subject of reasonable measures to keep such information secret.

114.    Defendant misappropriated such confidential and trade secret information of Grover in connection with the distribution and sale of the Illicit Game(s).

115.    Defendant, at the time of use, knew, or had reason to know, the Illicit Game(s) and the confidential and trade secret information used to create the Illicit Games were derived from or through a person who had utilized improper means to acquire such information.

116.    As a result of Defendant's misappropriation, Grover has been and continues to be damaged and irreparably injured, including, without limitation, the loss of sales and profits it would have earned but for Defendant's actions, and damage to Grover's reputation among potential and existing customers, business partners, investors, and in the industry in general.

117.    Defendant's misappropriation is willful and malicious and thereby entitles Grover to an award of exemplary damages.

118.    Defendant's misappropriation of Grover's confidential and trade secret information has caused and will continue to cause Grover irreparable and substantial injury, and, therefore, cannot be fully redressed through damages alone.  An injunction prohibiting Defendant from further use or disclosure of Grover's confidential and trade secret information is necessary to provide Grover with complete relief.

### SEVENTH CLAIM FOR RELIEF
*(Grover – Violation of Virginia's Uniform Trade Secrets Act*
*Pursuant to Va. Code § 59.1-336, et seq.)*

119.    Plaintiffs incorporate the preceding paragraphs by reference.

120.    Without Grover's consent or permission, and in violation of the VUTSA, Section 59.1-336, *et seq.* of the Virginia Code, Defendant misappropriated Grover's confidential and proprietary trade secrets, including, but not limited to, its Source Code.

121.    Grover's confidential and trade secret information is not generally known to or readily ascertainable by proper means to other people.

122.    Defendant, at the time of use, knew, or had reason to know, the Illicit Game(s) and the confidential and trade secret information used to create the Illicit Game(s) were derived from or through a person who had utilized improper means to acquire such information.

123.    Defendant misappropriated Grover's confidential information and trade secrets, including, but not limited to, its Source Code, by utilizing the Illicit Game(s) through marketing, use, and either selling, or offering to sell, the Illicit Games into the open market.

124.    The aforementioned trade secrets have independent economic value from not being generally known to other persons.

125.    Grover has taken reasonable precautions to maintain its confidential and trade secret information as confidential information, including, but not limited to, limiting access to such confidential and trade secret information.

126.    In violation of the VUTSA, Defendant misappropriated Grover's trade secrets to benefit themselves.

127.    Defendant's actions in misappropriating Grover's trade secrets were done in a knowing, willful, and malicious manner.

128.    As a result of Defendant's actions, Grover has been damaged, and continues to be damaged, by the unauthorized reproduction, publication, distribution, public display, and sale of the Illicit Games.  Defendant has never accounted to or otherwise paid Grover for its use of the Illicit Games.

129.    Defendant's acts are causing, and, unless restrained, will continue to cause, damage and immediate irreparable harm to Grover for which Grover has no adequate remedy at law.

130.    Defendant's actions have caused, and will continue to cause, Grover to lose profits.

131.    Plaintiffs are entitled to actual damages as a result of Defendant's misappropriation or a reasonable royalty for Defendant's misappropriation.

132.    As a result of Defendant's misappropriation, Grover is entitled to an award of its damages, costs, reasonable attorneys' fees, and punitive damages, as well as injunctive and equitable relief.

WHEREFORE, Plaintiffs pray of the Court as follows:

1.    For judgment that Defendant, Grayson Lightning Lube LLC:

(a)    has violated the Copyright Act, 17 U.S.C. §§ 101, *et seq.*;

(b)    has violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a);

(c)    has engaged in unfair competition in violation of the common law of the Commonwealth of Virginia;

(d)    has violated 18 U.S.C. § 1836(b);

(e)    has engaged in trademark infringement in violation of the common law of the Commonwealth of Virginia; and

(f)    has violated Virginia Code § 59.1-336, *et seq.*

2.      That an Order of Impoundment be entered pursuant to 17 U.S.C. § 503(a) directing the United States Marshal for the Western District of Virginia to impound from Defendant, Grayson Lightning Lube LLC, and its officers, employees, agents, attorneys, and representatives, and all other persons, firms, or corporations in active concert or privity or in participation with Defendant, to immediately deliver to the Court for impoundment the Illicit Games violating Plaintiff's, Grover Gaming, Inc., Copyrighted Works, together with an accounting to Plaintiffs, of: (a) the number of such Illicit Games in Defendant's possession, custody, or control; (b) where each Illicit Game was found; (c) the identity of the individual or individuals having possession, custody or control of each Illicit Game at the time it was found; and (d) a sworn explanation of how each Illicit Game was obtained, duplicated, or distributed, including the identity of all persons involved in such activity for each Illicit Game;

3.      That an injunction be issued enjoining and restraining Defendant, Grayson Lightning Lube LLC, and each of its officers, agents, employees, attorneys, and all those in active concert or participation with them from:

(a)      Defendant's continued use, publication, and display of the Copyrighted Works;

(b)      Defendant's continued deceptive practices, including marketing or passing off the Illicit Games in interstate commerce; and

(c)      Defendant's use of Grover's trademarks, intellectual property, and confidential information, including the Illicit Games.

4.      For the entry of an order directing Defendant, Grayson Lightning Lube LLC, and its officers, employees, agents, attorneys, and representatives, and all other persons, firms, or corporations in active concert or privity or in participation with Defendant, to deliver up for

destruction to Plaintiffs all products, advertisements, promotional materials, packaging, and other items in their possession or under their control bearing the Copyrighted Works, or any simulation, reproduction, counterfeit, copy or colorable imitation thereof, pursuant to 15 U.S.C. § 1118 and 17 U.S.C. § 503(b);

5.      For an assessment of:  (a) actual damages, plus the amount of Defendant's profits attributable to the infringement(s), or, in the alternative, an assessment of statutory damages, as authorized by 17 U.S.C. § 504(c) in an amount no less than $150,000; and (b) additional damages as authorized by 17 U.S.C. § 504(c) for Defendant's willful and knowing infringement of the Copyrighted Works;

6.      For an assessment of:  (a) damages suffered by Plaintiffs, pursuant to 15 U.S.C. § 1117(a); (b) an award of Plaintiffs' costs and attorneys' fees to the full extent provided for by Section 35 of the Lanham Act, 15 U.S.C. § 1117; and (c) profits, damages and fees, to the full extent available, pursuant to 18 U.S.C. § 1836(b) and/or Virginia Code § 59.1-92.12; and (d) punitive damages to the full extent available under the law;

7.      For a judgment against Defendant in an amount to be determined at trial, plus interest and costs as allowed by law;

8.      For any damages awarded to Plaintiffs as allowed by law for Defendant's violations, including enhanced and punitive damages;

9.      For costs and reasonable attorneys' fees, as allowed by law;

10.     For a trial by jury on all issues so triable; and

11.     For such other and further relief as the Court may deem just and proper.

Dated:  January 30, 2024

BANILLA GAMES, INC.
and
GROVER GAMING, INC.

/s/ Stephen M. Faraci, Sr.
Stephen M. Faraci, Sr., Esquire (VSB #42748)
Robert N. Drewry, Esquire (VSB #91282)
WHITEFORD, TAYLOR & PRESTON, L.L.P.
1021 E. Cary Street, Suite 1700
Richmond, Virginia 23219
Telephone:     (804) 977-3307
Facsimile:      (804) 977-3298
E-Mail:          sfaraci@whitefordlaw.com
E-Mail:          rdrewry@whitefordlaw.com

Robert Wm. Best (VSB #72077)
WHITEFORD, TAYLOR & PRESTON, L.L.P.
249 Central Park Avenue, Suite 300
Virginia Beach, Virginia 23462
Telephone:     (757) 271-9752
Facsimile:      (757) 271-9737
E-Mail:          rbest@whitefordlaw.com

*Counsel for Plaintiffs, Banilla Games, Inc. and Grover Gaming, Inc.*

**VERIFICATION**

STATE OF NORTH CAROLINA

COUNTY OF PITT

    Garrett Blackwelder, being duly sworn, deposes and says that he is the President of Banilla Games, Inc. and Grover Gaming, Inc. and as such is authorized to make this verification that he has read the foregoing VERIFIED COMPLAINT and the same is true, except as to those matters and things stated on information and belief, and, as to those, he believes them to be true to the best of his knowledge and belief.

                                Garrett Blackwelder, President
                                Banilla Games, Inc. and
                                Grover Gaming, Inc.

STATE OF NORTH CAROLINA

COUNTY OF PITT

    Sworn to (or affirmed) and subscribed before me this day by Garrett Blackwelder, President of Banilla Games, Inc. and Grover Gaming, Inc.

Date: 1/26/24

                                *Signature of Notary Public*

My commission expires: 8/1/26

Dorwin L Howard, Jr
NOTARY PUBLIC
Pitt County, NC
My Commission Expires August 01, 2026